UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VENUS RODRIGUEZ, | No. 17 CV 7248 |
| Plaintiff, | |
| v. | Magistrate Judge Young B. Kim |
| CITY OF CHICAGO, et al., | |
| Defendants. | July 19, 2018 |

# MEMORANDUM OPINION and ORDER

Plaintiff Venus Rodriguez filed this lawsuit against the City of Chicago ("the City") and several members of the Chicago Police Department ("CPD") under 42 U.S.C. § 1983 alleging, among other things, that they deprived her of her right to access the courts by failing to pursue or investigate her criminal complaint against an unknown Chicago Police Officer. Rodriguez also brings a claim against the City under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), alleging that the City has a *de facto* policy, practice, or custom of failing to investigate allegations of officer misconduct under a "code of silence" that encourages its officers to remain silent or give false information during investigations into a fellow officer's misconduct. Before the court are the City's Motion to Bifurcate and Stay Plaintiff's *Monell* Claim and Defendants' Joint Motion for a Protective Order Barring Discovery Related to Unrelated Police Involved

Shooting Incidents. For the following reasons, the City's motion to bifurcate is denied, and Defendants' motion for a protective order is granted:

**Background**

The following factual overview is taken from the complaint and is presumed true only for purposes of resolving the current motions. *See Veal v. Kachiroubas*, No. 12 CV 8342, 2014 WL 321708, at *1 n.2 (N.D. Ill. Jan. 29, 2014). Plaintiff Rodriguez is a Chicago Police Officer. On October 6, 2015, while she was off-duty, Rodriguez was at a Chicago bar with a companion who became involved in a verbal altercation with other bar patrons, including an unidentified, off-duty Chicago Police Officer, named in the complaint as "Unknown Chicago Policer Officer John Doe." As Rodriguez and her companion were leaving the bar, Officer Doe and several other male patrons physically assaulted her companion. When Rodriguez grabbed a cell phone and told the assailants that she was recording them, Officer Doe and his female companion then physically assaulted Rodriguez. When Defendant Officers Escamilla and Viramontes and Defendant Sergeant Comiskey arrived on the scene, Rodriguez identified herself as a police officer, described the assault, said she wanted to press charges against the offenders, and asked for medical assistance. After Defendant Officers on the scene learned that the offender was an off-duty police officer, they neither viewed nor asked the bar's employees to preserve existing video footage and left without any attempt to investigate, interview witnesses, or locate Officer Doe. Sergeant Comiskey also refused to call an ambulance for Rodriguez.

Defendant Officers took Rodriguez back to their police station where they continued to refuse her repeated requests for medical attention and tried to persuade her not to pursue any complaint against Officer Doe. In the days that followed, Rodriguez complained to CPD Internal Affairs and the Independent Police Review Authority ("IPRA") about the lack of investigation despite her efforts to pursue charges. Rodriguez's complaint was assigned to Defendant Detective Wojcik, who entered into an agreement or understanding with the other Defendant Officers to deter Rodriguez from pursuing the investigation. Instead of investigating her complaint, the tables were turned and IPRA investigated Rodriguez for making a false police report about the incident.

According to the complaint, Defendant Officers' refusal to investigate Rodriguez's complaint and pursuit of an investigation against her instead stem from a "code of silence" that requires Chicago Police Officers to remain silent about police misconduct. The code of silence is a *de facto* policy, practice, or custom of concealing officer misconduct, which includes failing to investigate misconduct and fabricating evidence against the complaining individual. The City allegedly also has a *de facto* policy, practice, or custom of investigating complaints against off-duty officers differently than complaints against other people. These policies caused Rodriguez's injuries because they motivated Defendant Officers to engage in wrongful acts against her.

## Analysis

**A. Motion to Bifurcate**

In its motion to bifurcate the City seeks to have the court separate and stay any litigation of Rodriguez's *Monell* claim until after the claims against Defendant Officers are resolved, arguing that considerations of judicial economy and avoiding unfair prejudice weigh toward delaying the *Monell* side of the case. Federal Rule of Civil Procedure 42(b) gives the district court considerable discretion to order separate trials of discrete claims "[f]or convenience, to avoid prejudice, or to expedite and economize." *See Treece v. Hochstetler*, 213 F.3d 360, 364-65 (7th Cir. 2000). Bifurcation may be appropriate if one or more of these criteria is met. *Id.* at 365. In recent years there has been "a growing body of precedent in this district for both granting and denying bifurcation in § 1983 cases." *Carter v. Dart*, No. 09 CV 956, 2011 WL 1466599, at *3 (N.D. Ill. Apr. 18, 2011). This body of precedent shows that determining whether to allow bifurcation must be done on a case-by-case basis, looking at the specific facts and claims presented. *See Estate of Roshad McIntosh v. City of Chi.*, No. 15 CV 1920, 2015 WL 5164080, at *2 (N.D. Ill. Sept. 2, 2015).

In arguing that bifurcation best serves the interests of judicial economy the City alludes to the idea that a plaintiff in most cases cannot prevail on a *Monell* claim without first establishing that the individual officers named in the complaint violated her constitutional rights, and that bifurcation may allow the parties to bypass expensive and time-consuming discovery and trial relating to the City's policies and practices. But nowhere in its brief does the City develop any argument

4

as to why the complaint in this case supports a conclusion that individual liability is a predicate to the *Monell* claim. (R. 69, Def.'s Mem. at 5, 13.) A *Monell* claim allows a plaintiff to recover relief under Section 1983 against a municipality if it has a widespread or well-settled practice or custom that is responsible for or the moving force behind a constitutional violation. *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303, 306 (7th Cir. 2010). Although in many cases a *Monell* claim may hinge on a showing that individual officers are liable for a constitutional violation, "a municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an *inconsistent* verdict." *Thomas*, 604 F.3d at 305 (emphasis in original); *see also Swanigan v. City of Chi.*, 775 F.3d 953, 963 (7th Cir. 2015) ("But district courts cannot prevent plaintiffs from pursuing potentially viable *Monell* claims that seek additional equitable relief or are distinct from the claims against individual defendants.").

The Seventh Circuit has laid out three factors that courts should consider in determining whether the municipality's liability is dependent on the claims against its officers: "the nature of the constitutional violation, the theory of municipal liability, and the defenses set forth." *Thomas*, 604 F.3d at 305. The City has made no attempt in its motion to address the *Thomas* factors, and those factors do not clearly fall in its favor with respect to Rodriguez's *Monell* claim. As for the nature of the alleged constitutional violation and theory of municipal liability, courts in this circuit most commonly find bifurcation is favored in the excessive force context, where the municipality's liability clearly hinges on whether the individual officers

5

in fact engaged in excessive force. *See Carr v. City of N. Chi.*, 908 F. Supp. 2d 926, 932 (N.D. Ill. 2012). But in other contexts, such as where there are allegations of false police reports, the claims may be based both on officers' individual actions and also on underlying policies, and a factual overlap between the two does not necessarily mean that the officers' actions are a predicate to *Monell* liability. *Compare McIntosh*, 2015 WL 5164080, at *1, *8 (denying bifurcation where allegations included falsified police reports), *with Williams v. City of Chi.*, __ F. Supp. 3d __, 2018 WL 2561014, at *11-12 (N.D. Ill. June 1, 2018) (granting bifurcation where allegations included falsified police reports).

Here Rodriguez alleges not only that Defendant Officers retaliated and conspired against her for seeking a criminal investigation against Officer Doe, but also that the retaliation was a natural consequence of the City's widespread policies, practices, and customs, and "was devised, approved and carried out by individuals with final policymaking authority with respect to the actions taken, including but not limited to, lodging an IPRA investigation against" Rodriguez. (R. 1, Compl. ¶ 72.) She also alleges that in furtherance of the alleged code of silence, the City, "by and through its agents and employees within the [CPD], and IPRA, individually and jointly failed and/or attempted to prevent or suppress the disclosure of the identity of [Officer Doe]." (Id. ¶ 79.) Based on these allegations, it is not at all clear that the City's liability hinges on a finding that Defendant Officers committed the constitutional violations Rodriguez attributes to them.

6

Nor does the third factor, the defenses set forth, weigh in favor of bifurcation here, because Defendant Officers have asserted qualified immunity as an affirmative defense. (R. 38, Defendant Officers' Ans. at 26); *see Thomas*, 775 F.3d at 305. In the presence of that defense Defendant Officers might not be liable based on qualified immunity even if they are found to have engaged in constitutional violations, and so bifurcation would not necessarily avoid a second trial on the *Monell* claim should Defendant Officers be found immune. *See Scott v. Buncich*, No. 16 CV 114, 2018 WL 1556412, at *5 (N.D. Ind. Mar. 30, 2018); *McIntosh*, 2015 WL 5164080, at *8.

The City asserts that because it is willing to consent to a judgment against it for compensatory damages if the finder of fact determines that the individual defendants violated Rodriguez's constitutional rights even if they are immune from judgment, that stipulation "waives qualified immunity" and would "practically end the litigation" without having to proceed on the *Monell* claim. (R. 69, Def.'s Mem. at 5 n.3, 13.) Although some courts in this circuit have been swayed by these stipulations, which the City seems to propose fairly routinely, *see Williams*, 2018 WL 2561014, at *12, others have found such stipulations insufficient to justify bifurcation, noting that the plaintiff is entitled to be the master of her own complaint and pursue claims even if they have a minimal pecuniary reward, *see McIntosh*, 2015 WL 5164080, at *9; *Warren v. Dart*, No. 09 CV 3512, 2012 WL 1866372, at *2 (N.D. Ill. May 22, 2012). That is because there are "legitimate non-economic motivators to pursue a *Monell* claim against the City," including deterring

7

future misconduct and shining a light on unconstitutional policies through a judgment finding the City liable based on its policies, practices, or customs. *See Estate of Loury by Hudson v. City of Chi.*, No. 16 CV 4452, 2017 WL 1425594, at *5 (N.D. Ill. Apr. 20, 2017); *Cadiz v. Kruger*, No. 06 CV 5463, 2007 WL 4293976, at *8-9 (N.D. Ill. Nov. 29, 2007) (noting that a separate *Monell* claim "is not legally extinguished merely because the plaintiff obtains full economic recovery through the claim against the individual officers"). A proposed consent judgment is particularly ill-designed to have any deterrent effect where, as here, it expressly denies any wrongdoing on the City's part. *See Loury*, 2017 WL 1425594, at *5 n.3; (R. 69, Def.'s Mem. Ex. A).

Turning to the City's efficiency argument, it argues that the breadth of Rodriguez's *Monell* claim justifies bifurcation because litigating that claim would create a heavy discovery burden, expanding the scope of discovery to the production of "hundreds of thousands of pages of documents," intrusive depositions of high-ranking officials, and otherwise unnecessary expert discovery, with the result that "the scope of this discovery will be colossal." (R. 69, Def.'s Mem. at 6-9.) This court recognizes that discovery with respect to the *Monell* claim will inevitably be broader than discovery limited to the claims against the individual officers and may increase the amount of work that goes into litigating the case on all sides, *see Veal*, 2014 WL 321708, at *5, but that broader scope does not necessarily translates to an undue burden, *see Cadiz*, 2007 WL 4293976, at *4. And courts in this circuit have been skeptical of the City's speculative assertions about the high costs of *Monell*

8

discovery. *See id.* at *3; *Bonds v. City of Chi.*, No. 16 CV 5112, 2018 WL 1316720, at *5 (N.D. Ill. Mar. 14, 2018); *Loury*, 2017 WL 1425594, at *5; *McIntosh*, 2015 WL 5164080, at *9. The City's argument also overlooks the risk that bifurcating the claims could add unnecessary complexity to the discovery process by instigating disputes over whether discovery requests fall within the scope of the individual claims or bleed over into the *Monell* claim. *See Cadiz*, 2007 WL 4293976, at *7. Moreover, to the extent that *Monell* discovery becomes overly burdensome, the court can tailor discovery as needed based on appropriate motions. *See Terry v. Cook Cnty. Dep't of Corrs.*, No. 09 CV 3093, 2010 WL 2720754, at *3 (N.D. Ill. July 8, 2010). For these reasons, and especially because the City has not developed any argument to persuade the court that a verdict for Defendant Officers and against the City would be inconsistent, *see Id.*; *Warren*, 2012 WL 1866372, at *2, the court is not persuaded that bypassing the *Monell* claim would create efficiencies.

Finally, with respect to bifurcation at least, the City argues that trying all the claims together "will severely prejudice *all* defendants" because evidence regarding the City's policies and the actions of other CPD officers could invite the jury to find Defendant Officers guilty by association. (R. 69, Def.'s Mem. at 9-10 (emphasis in original).) But at this point in the litigation, before discovery has fleshed out the evidence in support of the claims against Defendants, it is premature to determine whether a joint trial would actually cause unfair prejudice. *See Bonds*, 2018 WL 1316720, at *5. Defendants are free to re-raise this issue at the close of discovery should the case proceed to trial and if they believe the

9

potential prejudice cannot be addressed through the proper use of limiting instructions. *See Loury*, 2017 WL 1425594, at *4. In the meantime, the City's conclusory assertions of prejudice are insufficient to warrant bifurcation.

**B.    Motion for a Protective Order**

Turning to Defendants' motion for a protective order, they seek to bar Rodriguez from engaging in discovery with respect to the Laquan McDonald ("McDonald") shooting, arguing that such discovery is not proportional to the needs of this case, is designed to annoy, harass, and embarrass the litigants, and would force witnesses to violate a decorum order put in place by the state court judge overseeing the criminal proceedings stemming from that incident. (R. 58, Defs.' Mem. at 5-8.) Under Federal Rule of Civil Procedure 26(b):

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Rule 26(c)(1) also states that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." This Rule specifies that a protective order may "forbid[] inquiry into certain matters, or limit[] the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(D). The party seeking a protective order must show that good cause exists, and this court "maintains the discretion to determine

whether a protective order is appropriate and what degree of protection is required." *Nieves v. OPA, Inc.*, 948 F. Supp. 2d 887, 891 (N.D. Ill. 2013).

This court concludes that at least at this time, Defendants have shown that good cause exists for the protective order they seek limiting discovery related to the McDonald shooting. Although Rodriguez will be allowed to proceed with discovery on her *Monell* claim, the decorum order in place in the criminal proceeding prohibits "any law enforcement employee of any agency involved in this case" from making any statement for public dissemination as to the possible existence of evidence in that case, or to make any statement outside of court as to the substance of the case. (R. 58, Defs.' Mem. Ex. B.) The order also prohibits Chicago Police Officers from authorizing "the release of any documents, exhibits, photographs or any evidence, the admissibility of which may have to be determined by the Court." (Id.) The judge did not carve out an exception for discovery in civil litigation, and made clear that "[a]nyone in violation of this court order may be held in contempt of court." (Id.) The court is concerned that allowing discovery into the McDonald shooting, regardless of the standing confidentiality order in place in this case, could put witnesses in this case in the position of violating the decorum order and subject them to sanctions in the state criminal case. That potential burden is disproportional to the needs of this case. *See* Fed. R. Civ. P. 26(b), (c)(1).

Defendants also point out that after the decorum order was entered, the court in another on-going civil case in this district involving CPD officers quashed a subpoena targeting documents relevant to the McDonald shooting. (R. 58, Defs.'

11

Mem. Ex. D.) The party seeking to quash the subpoena argued that complying with the subpoena would violate the decorum order, even where disclosure would be for expert's eyes only. (*Holmes v. Hernandez*, No. 14 CV 8536, R. 267 at 5.) The court in *Holmes* granted the motion without prejudice to the plaintiff later seeking the documents "if the state-court judge overseeing the Van Dyke prosecution authorizes it." (Id., R. 284.) Similarly, this court will revisit this ruling if Rodriguez is able to gain authorization from the state court judge who entered the decorum order to obtain the discovery she seeks.

## Conclusion

For the foregoing reasons, the City's Motion to Bifurcate and Stay Plaintiff's *Monell* Claim is denied and Defendants' Joint Motion for a Protective Order Barring Discovery Related to Unrelated Police Involved Shooting Incidents is granted without prejudice to Rodriguez.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**