UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VENUS RODRIGUEZ, | No. 17 CV 7248 |
| Plaintiff, | |
| v. | Magistrate Judge Young B. Kim |
| THE CITY OF CHICAGO, et al, | |
| Defendants. | February 6, 2019 |

**MEMORANDUM OPINION and ORDER**

Before the court is Plaintiff Venus Rodriguez's motion to compel Defendant City of Chicago ("the City") to produce documents it has withheld from discovery based on its assertions that they are protected by the deliberative process and investigatory privileges. For the following reasons, the motion is granted in part and denied in part:

**Background**

Rodriguez is a Chicago Police officer who alleges that on October 6, 2015, an unknown, off-duty member of the Chicago Police Department ("CPD") and his companion physically assaulted her at a bar she was patronizing with a friend while off-duty. Rodriguez alleges that when members of the CPD arrived at the bar in response to the assault, she asked to press charges against her assailants and requested medical assistance. According to her complaint, when the responding officers learned that her assailant was an off-duty police officer they refused her medical care and left the scene without investigating the assault. Rodriguez alleges

that when she complained to CPD's Internal Affairs and the Independent Police Review Authority ("IPRA") about the lack of an investigation, she was retaliated against for breaking what she alleges is a CPD "code of silence" discouraging officers from exposing a fellow officer's misconduct. Specifically, she alleges that IPRA retaliated against her by accusing her of making a false police report about the altercation and by investigating her instead of her assailants. Rodriguez has sued the City and several individual CPD officers under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), alleging that the City has a *de facto* policy, practice, or custom of failing to investigate officer misconduct pursuant to its "code of silence." She also claims that Defendants conspired to violate her constitutional rights by refusing to investigate her assailant and by launching an IPRA investigation against her instead.

Discovery is currently underway. Rodriguez has issued to the City requests to produce information about the City's alleged decision to make her the target of an IPRA investigation. In particular, Rodriguez seeks information related to IPRA Log file #1077459, which is the IPRA file associated with the investigation into her complaint against the unidentified CPD officer who assaulted her. During discovery Defendants produced the entire investigatory file for Log file #1077459, but the City's Civilian Office of Police Accountability ("COPA")—the City agency which has since replaced IPRA—has withheld 34 emails related to that file on the basis of the deliberative process and investigatory privileges. (R. 117, Defs.' Resp. at 2 & Ex. A, Hearts-Glass Decl. ¶¶ 5-7.) On October 15, 2018, Defendants

produced a privilege log outlining its assertions with respect to the withheld emails. (R. 110, Pl.'s Mot. at 5 & Ex. B.) Rodriguez challenges the City's privilege assertion. The court reviewed the subject emails *in camera*.

## Analysis

Rodriguez argues that the deliberative process and investigatory privileges do not apply here, and further asserts that even if they did, her particularized need for disclosure overrides the City's interest in preventing the information's disclosure. The withheld information consists of two categories of documents: (1) emails attaching drafts of final summary reports written in the course of developing COPA's finding with respect to Log file #1077459; and (2) emails among COPA employees involved in the investigation underlying Log file #1077459. Federal Rule of Civil Procedure 26 allows discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," and the information need not be admissible to be discoverable. Fed. R. Civ. P. 26(b)(1). Because Rodriguez's claims arise primarily under federal law, federal common law governs the City's privilege assertions. *See Evans v. City of Chi.*, 231 F.R.D. 302, 319 (N.D. Ill. 2005).

A.  **Deliberative Process Privilege**

The federal common law deliberative process privilege protects communications that are part of a government agency's decision-making process so long as those communications are both "pre-decisional" and "deliberative." *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993). The privilege is designed to

encourage the "frank discussion of legal and policy matters" related to agency decisions, *id.* at 1389, and to "protect the quality of the flow of ideas within a government agency" by allowing subordinates to give decision-makers their "uninhibited opinions and recommendations," *K.L., L.F. & R.B. v. Edgar*, 964 F. Supp. 1206, 1208 (N.D. Ill. 1997) (quotations and citations omitted). Although the privilege protects broad-based policy decisions made by government agencies, it also attaches to more individualized decision-making, such as the summary reports and discussions that are part of the process of formulating an official position with respect to internal investigations of police officer conduct. *See Holmes v. Hernandez*, 221 F. Supp. 3d 1011, 1017-18 (N.D. Ill. 2016).

Courts apply a two-part test in evaluating claims of the deliberative process privilege. *Ferrell v. U.S. Dep't of Hous. & Urban Dev.*, 177 F.R.D. 425, 428 (N.D. Ill. 1998). First, the court asks whether the party asserting the privilege has shown that the privilege applies to the documents it seeks to protect. *Edgar*, 964 F. Supp. at 1209. In the first step, to make out a *prima facie* case that the privilege should apply, the City must make sure that three things happen:

> (1) the department head with control over the matter must make a formal claim of privilege, after personal consideration of the problem; (2) the responsible official must demonstrate, typically by affidavit, precise and certain reasons for preserving the confidentiality of the documents in question; and (3) the official must specifically identify and describe the documents.

*See id.* If the City makes that showing, then in the second step the court asks whether the moving party has shown a particularized need for the withheld information. *Ferrell*, 177 F.R.D. at 428.

4

In support of its assertion of the deliberative process privilege, the City has submitted a privilege log describing the withheld emails, along with a declaration from Angela Hearts-Glass, who is COPA's Deputy Chief Administrator-Chief Investigator.[1] (R. 117, Defs.' Resp. Ex. A.) In her declaration Hearts-Glass makes a formal claim of privilege, states that she personally considered the need to maintain the confidentiality of the withheld emails, and provides a brief description along with the bates numbers of the emails. (Id. ¶¶ 7-11.) She also asserts that the withheld emails convey deliberations and impressions discussed in the context of investigative strategies related to Log file #1077459. She further asserts that the withheld summary reports must be shielded to avoid "exposing COPA investigators to criticism based on edits and recommendations for additional work made by a supervisor," and that compelling the City to reveal those deliberations would have a chilling effect on frank discussions among COPA investigators. (Id. ¶ 12(b), (c).) Similar declarations have been found sufficient to meet the procedural requirements for asserting the deliberative process privilege in this district. *See Holmes*, 221 F. Supp. 3d at 1016-17; *Turner v. City of Chi.*, 15 CV 06741, 2017 WL 552876, at *3 (N.D. Ill. Feb. 10, 2017).

Upon *in camera* review of the withheld emails, however, the court finds that Hearts-Glass's assertions are not borne out with respect to all of the emails. Many of those emails are devoid of any recommendations, suggestions, or opinions that

---

[1] The fact that the City first provided the declaration as an attachment to its response to the motion and did not initially attach it to the privilege log is not a barrier to its privilege assertions. *See Guzman v. City of Chi.*, No. 09 CV 7570, 2011 WL 55979, at *2 (N.D. Ill. Jan. 7, 2011).

5

could be framed as being "deliberative" concerning COPA Log file #1077459. Instead, several of the emails convey merely factual information that are devoid of any subjective commentary. The deliberative process privilege does not apply to purely factual information unless it is "inextricably intertwined" with deliberations, *Enviro Tech Int'l, Inc. v. U.S. E.P.A.*, 371 F.3d 370, 374-75 (7th Cir. 2004), and with respect to many of the emails the City has withheld, it is not obvious that the facts conveyed are enmeshed with any intra-agency deliberations. Accordingly, the court finds that the City has not properly asserted the deliberative process privilege with respect to the 12 emails identified as bates numbers ending with the last four digits 0761-0764, 0848-0851, 6250-6252, and 6699. With respect to the remaining 22 emails, because Hearts-Glass's assertions that they reflect at least some level of recommendations or strategy decisions are borne out by this court's *in camera* review, the court finds that the City has properly invoked the deliberative process privilege as to these emails. *See Edgar*, 964 F. Supp. at 1210 (compelling the production of purely factual information while protecting information reflecting "advisory opinions, recommendations, projections, proposals, and/or deliberations that constitute parts of governmental decision- and policy-making processes").

Turning to the second step of the analysis, the court must determine whether Rodriguez has shown that her need to review the 22 emails to which the privilege attaches outweighs the privacy interests the City has identified here. In weighing whether Rodriguez has a particularized need that overrides the privilege, the court considers the following factors:

> (1) the relevance of the documents to the litigation; (2) the availability of other evidence that would serve the same purpose; (3) the government's role in this litigation; (4) the seriousness of the litigation and the issues involved; and (5) the degree to which the disclosure of the document sought would tend to chill future deliberations within government agencies.

*See Bahena v. City of Chi.*, No. 17 CV 8532, 2018 WL 2905747, at *4 (N.D. Ill. June 11, 2018). Rodriguez argues that she has a particularized need for the withheld documents because at the heart of her *Monell* and retaliation claims are her allegations that pursuant to a pervasive code of silence, Defendants refused to investigate her alleged assailant and then retaliated against her by doctoring the IPRA investigation files to make her the target of the investigation. Based on those claims she argues that it is crucial for her to access the withheld emails to discover "how and why Plaintiff was transformed from a battery victim and complainant into the accused subject of an internal investigation," and that no other evidence can illuminate whether IPRA conducted its investigation in furtherance of a retaliatory intent. (R. 118, Pl.'s Reply at 1.)

Two recent cases from this district shed a particularly helpful light on how to weigh a plaintiff's interest in communications underlying an IPRA investigation in a context where the plaintiff's claims turn on whether IPRA investigators intentionally covered up CPD wrongdoing or otherwise acted in furtherance of a code of silence. In *Holmes*, 221 F. Supp. 3d at 1014, 1022, the court concluded that the plaintiff's particularized need for IPRA's draft summary reports weighed in favor of disclosure given her *Monell* claim alleging that the City's alleged policy of failing to properly investigate police misconduct caused her to be the victim of

excessive force. In weighing the relevant factors, the court found that it was "crucial" that an IPRA investigator had come forward to say he had been fired for refusing to change his recommendations, because that evidence showed that there was more than "speculation" to support the plaintiff's claims that the summary reports were relevant to her *Monell* theory. *Id.* at 1019. The court further noted that "draft summary reports serve a unique evidentiary purpose" in that they can highlight instances where an IPRA investigator capitulates to a supervisor's instruction to change a recommendation to benefit an officer under investigation or to edit a report to provide artificially stronger justification for an officer's conduct. *Id.* at 1019-20. The court also reasoned that in cases challenging a law enforcement practice under *Monell*, the main issue is the deliberative process in which IPRA engaged, and "draft summary reports are the only documentary evidence of that process." *Id.* at 1021-22. The court emphasized, however, that the seriousness of the issues in *Holmes* was supported by the former IPRA investigator's assertions that he had in fact been retaliated against for refusing to change his recommendations in similar cases. *Id.* at 1023 n.5. The court concluded that these factors outweighed the danger that the compelled disclosure of the IPRA communications would have a chilling impact on IPRA deliberations, but to minimize that impact, it ordered the draft summary reports to be produced under an "attorneys' eyes only" designation. *Id.* at 1023.

In *Turner*, 2017 WL 552876, at *3, the plaintiff sought production of 118 documents over which the City asserted the deliberative process privilege, arguing

that she had a particularized need for those documents to support her claim that IPRA had intentionally covered up the defendant officer's misconduct pursuant to a code of silence. The court rejected the plaintiff's argument noting that "if this rationale were accepted by the Court, the privilege would be overcome in any case in which the government's intent is called into question, rendering the deliberative process privilege a nullity in any case with a *Monell* claim." *Id*. The *Turner* court distinguished *Holmes*, noting that without specific evidence supporting the plaintiff's theory that an IPRA investigator had been improperly pressured to change recommendations, the draft summaries and other IPRA communications were only of "marginal relevance." *Id*. at *4. The court reviewed the withheld emails and found that they did not bear out the plaintiff's theory that IPRA investigators had been told to discredit her account of events. *Id*. The court also was particularly concerned about the chilling effect production of IPRA's documents would have with respect to discussion among IPRA personnel regarding the merits of an investigation, and therefore refused to find the privilege overcome by the plaintiff's need for the documents. *Id*.

As in *Turner*, this court finds that on balance the applicable factors weigh against overriding the assertion of privilege. The first two factors—relevance and the availability of alternative evidence—weigh against Rodriguez because she has not pointed to any evidence showing that IPRA changed her status from victim to assailant with respect to the underlying assault to retaliate against her for breaking a code of silence. Moreover, the City has already made available to Rodriguez the

9

investigative file for Log #1077459, including witness statements and documentary evidence. *See Guzman*, 2011 WL 55979, at *4 (declining to order City to produce IPRA communications relevant to *Monell* claims where City already produced entire investigatory file). This court's review of the summaries and communications withheld here does not lend credence to her assertions that she needs this particular evidence to substantiate her theory that IPRA investigators improperly manipulated her file. *See Turner*, 2017 WL 552876, at *4 (declining to override privilege where "the Court's review of the summaries and other documents in this case do not substantiate a theory that evidence is being suppressed or manipulated" as alleged). Although the City is the central party to Rodriguez's claims, which on their face raise serious issues about IPRA's investigatory process, it is also true that revealing IPRA's internal communications simply because Rodriguez alleges IPRA misconduct would undermine the agency's ability to engage in free and frank discussions on the merits of individual investigations. *See id.* Accordingly, in the particular circumstances of this case, the court concludes that Rodriguez's interest in reviewing the 22 withheld emails to which the deliberative process privilege properly attaches does not override the City's interest in maintaining their privacy.

**B.    The Investigatory Privilege**

Because the court concludes that the deliberative process privilege shields only 22 of the withheld emails, it must also consider whether the City properly invokes the investigatory privilege to prevent disclosure of the 12 emails not protected. The investigatory privilege specifically protects "civil as well as criminal

law enforcement investigatory files from civil discovery." *Anderson v. Marion County Sheriff's Dep't*, 220 F.R.D. 555, 563 (S.D. Ind. 2004) (quotation and citation omitted). The purpose of this privilege is to protect sources, witnesses, and law enforcement officers and to prevent interference with on-going investigations, *id.*, and accordingly, a claim that the investigatory privilege applies is "somewhat stronger" when the investigation is on-going, *Santiago v. City of Chi.*, No. 09 CV 3137, 2010 WL 1257780, at *2 (N.D. Ill. March 26, 2010). The burden is on the City as the party asserting the privilege to show that it applies, *Anderson*, 220 F.R.D. at 563, and it must show more than an on-going investigation to demonstrate that the investigatory privilege should protect the documents. *See Bond v. Utreras*, No. 04 CV 2617, 2006 WL 1343666, at *2 (N.D. Ill. May 12, 2006). As with the deliberative process privilege, Rodriguez may overcome a valid assertion of the investigatory privilege if she shows that her need for the information outweighs the harm to the City should the privilege be lifted, *see Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1125 (7th Cir. 1997).

Starting with the City's burden to provide specific reasons why the withheld emails fall within the investigatory privilege, *see Preston v. Unknown Chi. Police Officer No. 1*, No. 10 CV 0136, 2010 WL 3273711, at *3 (N.D. Ill. Aug. 16, 2010), in her declaration Hearts-Glass states that release of the emails could interfere with the on-going COPA investigation, (R. 117, Defs.' Resp. Ex. A, Hearts-Glass Decl. ¶12(f)). Rodriguez responds that Defendants are creating "the illusion of an active investigation" where none exists, pointing to a letter she received from the Chief

Administrator of COPA four days *after* Defendants produced their privilege log, informing her that the COPA investigation was not yet complete. (R. 110, Pl.'s Mot. at 11 & Ex. C.) Because Rodriguez does not point to any evidence that the COPA investigation has been finalized, the court assumes for purposes of this analysis that the investigation is still ongoing.

That said, the general statements in Hearts-Glass's declaration are insufficient to demonstrate that the relevant 12 emails should be protected from disclosure under the investigatory privilege. *See Anderson*, 220 F.R.D. at 565 (noting that "sweeping conclusions" and generalities regarding the impact of disclosure are unhelpful to the privilege determination). Hearts-Glass asserts that disclosure could give witnesses or other officers information about what witnesses have already said, what the investigators are thinking, and what kinds of questions investigators might ask future witnesses. (R. 117, Defs.' Resp. Ex. A, Hearts-Glass Decl. ¶12(f).) But these general assertions do not identify a specific harm beyond a concern that the withheld materials might influence future witness and officer statements to investigators if they are disseminated. *See Preston*, 2010 WL 3273711, at *2-*3; *Santiago*, 2010 WL 1257780, at *4. Moreover, as discussed above, the 12 withheld emails reflect purely factual information, and as relevant for the current analysis, they do not appear to reveal any confidential investigatory techniques or to discuss any on-going criminal investigation that might otherwise justify the claim of privilege. *See Bond*, 2006 WL 1343666, at *2. Out of an abundance of caution, however, the court will follow the lead of similar cases from

this district where—in deference to the City's concern that disclosure of otherwise private information connected to an on-going investigation could impact the statements of future witnesses—the courts ordered the files to be produced subject to an "attorneys' eyes only" ("AEO") designation, allowing Rodriguez's attorneys to review the emails and use them only for purposes of this case. *See Preston*, 2010 WL 3273711, at \*2-\*3; *Santiago*, 2010 WL 1257780, at \*4; *Lewis v. City of Chi.*, 04 C 3904, 2004 WL 2608302, at \*3 (N.D. Ill. Nov. 16, 2004). Accordingly, the 12 emails not protected must be produced, subject to an AEO designation.

## Conclusion

For these reasons, Rodriguez's motion to compel is granted with respect to the 12 emails identified with bates numbers ending in 0761-0764, 0848-0851, 6250-6252, and 6699. These emails must be produced subject to an AEO designation. Rodriguez's motion is denied with respect to the other 22 withheld emails.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**