IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VENUS RODRIGUEZ, | ) | |
| | ) | |
| Plaintiff, | ) | No. 17 C 7248 |
| | ) | |
| v. | ) | District Judge Robert M. Dow |
| | ) | |
| THE CITY OF CHICAGO, et. al, | ) | Magistrate Judge Gabriel A. Fuentes |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

On October 6, 2017, Plaintiff, Venus Rodriguez, a Chicago Police officer, filed this lawsuit against the City of Chicago ("the City") and several other members of the Chicago Police Department ("CPD") under 42 U.S.C. § 1983, alleging that after she reported being physically assaulted at Mr. C's Midway Bar by an unknown CPD officer, Defendants unlawfully retaliated against her by refusing to pursue or investigate her criminal complaint and instead launching an investigation against Plaintiff. (D.E. 1, Compl.) Plaintiff also brings a claim against the City under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), alleging that Defendants acted together with investigators pursuant to a "code of silence," which discourages CPD officers from exposing fellow officers' misconduct. On April 22, 2019, Magistrate Judge Kim granted Defendants' motion to bifurcate the *Monell* claim and stay *Monell* discovery pending disposition of the claims against the individual Defendants. (D.E. 162.) On April 30, 2019, Judge Kim extended fact discovery to June 14, 2019 and expert discovery to August 19, 2019. (D.E. 167.) Now pending before this Court are Plaintiff's Motion to Compel (D.E. 170) and her Motion to Modify Discovery Deadlines (D.E. 168).

I.  **Background to Plaintiff's Motion to Compel**

On April 22, May 3, and May 20, 2019, the City produced additional or amended privilege logs asserting that an investigative privilege and the deliberative process privilege applied to certain documents related to "Log File No. 1077459," the file associated with the investigation started by IPRA (the Independent Police Review Authority) into Plaintiff's complaint against the unidentified CPD officer and continued by COPA (the Civilian Office of Police Accountability), which replaced IPRA as the civilian oversight agency of the CPD on September 15, 2017. The City produced some of the documents but continues to assert the deliberative process and, arguably, the investigatory privilege over the documents Bates-labeled: 4544-4556, 4557-69, 4570-81, 4582-93, 4594-4607, 10377, 10745, 10747, 10749, 10751, 10834-35 and 10860 ("the Withheld Materials"). (D.E. 175, City's Resp. at 2.) Plaintiff now moves the Court to compel the City to produce the Withheld Materials. (D.E. 178, Pl.'s Reply Re: Mot. to Compel at 1.)

A.  **Legal Standard**

Federal common law applies to the question of privilege in this federal question suit. *See Hamdan v. Ind. Univ. Health N. Hosp., Inc.*, 880 F.3d 416, 421 (7th Cir. 2018). The City does not dispute that the Withheld Materials are relevant and otherwise discoverable under Federal Rule of Civil Procedure 26(b)(1). In general, courts construe privileges narrowly because "they are in derogation of the search for truth." *Valero Energy Corp. v. United States*, 569 F.3d 626, 630 (7th Cir. 2009). The privileges at issue here should be applied "as narrowly as consistent with efficient Government operation." *Fed. Deposit Ins. Corp. v. Giancola*, No. 13 C 3230, 2015 WL 5559599, at *4 (N.D. Ill. Sept. 18, 2015) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980)). In addition, "caution should be especially taken in recognizing a privilege in a federal civil rights action, where any assertion of privilege must overcome the

fundamental importance of a law meant to protect citizens from unconstitutional state action." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 451 (N.D. Ill. 2006). The Court has broad discretion in ruling on motions to compel. *See James v. Hyatt Regency Chicago*, 707 F.3d 775, 784 (7th Cir. 2013).

### B. Judge Kim's February 6, 2019 Opinion

This is not the first time the City has withheld documents from Log File No. 1077459 on the grounds of the deliberative process and investigative privileges. On November 19, 2018, Plaintiff moved to compel the City to produce 34 other documents withheld on these grounds. After an *in camera* review of those documents and briefing by the parties, Judge Kim issued a memorandum opinion and order on February 6, 2019, holding that the deliberative process and investigative privileges did not apply to 12 of the documents. *Rodriguez v. City of Chicago*, 329 F.R.D. 182, 187, 189 (N.D. Ill. 2019) (D.E. 135). Judge Kim ordered those documents be produced subject to an attorneys'-eyes-only designation. 329 F.R.D. at 190. As to the remaining 22 documents to which the deliberative process applied, Judge Kim held that Plaintiff's interest in reviewing them did not "override the City's interest in maintaining their privacy." *Id.* at 189.

## II. Deliberative Process Privilege

"The deliberative process privilege protects communications that are part of the decision-making process of a governmental agency." *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993). The privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001) (internal quotation marks and citation omitted). It "covers

3

documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Id.* at 8 (internal quotation marks omitted). "[T]he Seventh Circuit also has applied the privilege in cases where the communications at issue involved how a governmental agency intended to rule in a particular, individual situation." *Fed. Deposit Ins. Corp. v. Giancola*, No. 13 C 3230, 2015 WL 5559599, at *2 (N.D. Ill. Sept. 18, 2015) (citing *Farley*, 11 F.3d at 1389).

Courts apply a two-part test to evaluate deliberative process privilege claims. That test is set forth and applied to the motion to compel below.

### A. The *Prima Facie* Case for Whether the Deliberative Process Privilege Applies

First, the Court asks "whether the party asserting the privilege has shown that the privilege applies to the documents it seeks to protect." *Rodriguez*, 329 F.R.D. at 186 (citing *K.L., L.F. & R.B. v. Edgar*, 964 F. Supp. 1206, 1208 (N.D. Ill. 1997)). At this step, the party asserting the deliberative process privilege must make out a *prima facie* case that a document it seeks to withhold is "both predecisional in the sense that it is actually antecedent to the adoption of an agency policy, and deliberative in the sense that it is actually related to the process by which policies are formulated." *Enviro Tech Int'l, Inc. v. U.S. E.P.A.*, 371 F.3d 370, 375 (7th Cir. 2004). To establish a *prima facie* case,

> (1) the department head with control over the matter must make a formal claim of privilege, after personal consideration of the problem; (2) the responsible official must demonstrate, typically by affidavit, precise and certain reasons for preserving the confidentiality of the documents in question; and (3) the official must specifically identify and describe the documents.

*Rodriguez*, 329 F.R.D. at 186 (quoting *Ferrell v. U.S. Dep't of Hous. & Urban Dev.*, 177 F.R.D. 425, 428 (N.D. Ill. 1998)). The documents being withheld must be described in "sufficient detail." *Turner v. City of Chicago*, No. 15 C 06741, 2017 WL 552876, at *3 (N.D. Ill. Feb. 10, 2017).

4

On May 20, 2019, as an attachment to its brief in response to Plaintiff's motion to compel, the City submitted a declaration from Angela Hearts-Glass, Deputy Chief Administrative Officer of COPA, asserting that the documents at issue are privileged. (City's Resp. Ex. D: Hearts-Glass 05/20/19 Decl.) Ms. Hearts-Glass asserted that her declaration was "based on [her] professional experience and a review of the records described in this verification over which COPA has asserted an investigative and deliberative process privilege." (*Id.* ¶ 3.) Initially, she described the records as 54 pages of documents consisting of "draft summary reports and findings," "draft allegations and notes" and "the official CLEAR file" for the investigation into "still-open COPA Log File No. 1077459." (*Id.* ¶¶ 4-5.) The Court, on its consideration of the motion to compel, discovered that her reference to the Withheld Materials contained several errors, which warranted requiring the City to submit a corrected declaration before the Court could consider whether the City had established a *prima facie* case as to the applicability of the deliberative process privilege. (D.E. 188.) On July 29, 2019, the City submitted a corrected declaration identifying 72 pages of withheld documents (D.E. 190), all of which previously had been submitted to the Court for *in camera* review.

The Court finds that Ms. Hearts-Glass's corrected declaration, and the Court's *in camera* review of the Withheld Materials, have established a *prima facie* case for the applicability of the deliberative process privilege to all but one portion of one document from the Withheld Materials, as set forth further below.

1. **Personal Consideration of the Problem**

The corrected affidavit of Ms. Hearts-Glass sufficiently establishes that she has undertaken the necessary personal consideration of the problem by reviewing and considering each of the

5

pages in the set of Withheld Materials, for purposes of the City's *prima facie* case. *See Rodriguez*, 329 F.R.D. at 186-87.

2. **Precise and Certain Reasons**

Ms. Hearts-Glass's corrected affidavit further asserts that dissemination of these 72 pages of documents could "impede COPA's ability to conduct a fair and effective investigation," because "potential future witnesses and/or accused officers" might obtain "information about what other witnesses have already said, COPA's investigative methods, what the investigator is thinking about the investigation, and/or what the investigator may ask a potential witness and/or accused officer during an interview." (D.E. 190 ¶ 7.) In addition, Ms. Hearts-Glass asserts that producing "preliminary drafts and edits to preliminary drafts of summary reports . . . would have a chilling effect on the ability of [COPA] investigators and supervisors to engage in free, open, collaborative discussions precedent to the agency's final determination." (*Id.* ¶ 10(c).) The reasons asserted by the City, in its corrected affidavit, for the applicability of the privilege are precise and certain enough to establish the *prima facie* case. *See Holmes v. Hernandez*, 221 F. Supp. 3d 1011, 1017 (N.D. Ill. 2016).[1]

3. **Specific Identification and Description of the Documents**

The Court notes the City has added a more precise description of the Withheld Documents in the corrected declaration filed on July 29, 2019. The corrected declaration again describes the materials as "draft summary reports and findings" and "draft allegations and notes" (*see* D.E. 190 ¶ 5) but also calls them "preliminary" drafts and "edits to preliminary draft summary reports." (*Id.* ¶ 10(c).) Obviously an "edit" to a preliminary draft report is more indicative of predecisional, internal agency deliberation than a "draft report" that may not reflect such deliberation. The word

---

[1] The affidavit submitted, and found sufficient, in the *Holmes* matter may be found at Docket Entry 179-1 on the *Holmes* docket in this Court, under Case No. 14 CV 8536.

"preliminary" is somewhat less helpful but nonetheless indicative of the non-final nature of a report. Although the Court does not see labeling a draft report as "preliminary" as establishing conclusively that the document is within the deliberative process privilege, the descriptions in the corrected declaration are consistent with other descriptions that have been found sufficient at least to establish the *prima facie* case for applicability of the deliberative process privilege to the Withheld Materials.

In any event, the Court has had an opportunity to review the Withheld Materials *in camera* and, without further analysis of the adequacy of descriptions provided to a court by affidavit in advance of an *in camera* review,[2] the Court finds based on the *in camera* review that the *prima facie* case for applicability of the deliberative process privilege is established as to all but a part of one of the Withheld Documents: FCRL 10377. Without revealing the content of the Withheld Materials, our analysis of the privilege's applicability to them is set forth as follows:

*Materials Covered by the Privilege*

As to the following materials, the City established its *prima facie* case for the applicability of the deliberative process privilege to the documents:

---

[2] The Court suggests that more specific descriptions indicating more clearly why a privilege applies are possible without revealing privileged content. Descriptions such as "draft summary report containing predecisional investigator recommendations as to the investigation's outcome," or "draft summary report reflecting investigative agency's internal comments, edits or questions suggesting possible revisions to predecisional draft of report," for example, would have been more helpful in facilitating the Court's determination that a privilege does or does not apply. Ideally, the information in the affidavit (or the privilege log) ought to be sufficient, without *in camera* review, to determine the threshold applicability of the deliberative process privilege. The parties are directed to review the Court's statement on "Privilege Logs" on its website as guidance for preparation of privilege logs or privilege assertions going forward in the litigation. *See* Jerold S. Solovy & Robert Byman, "It's As Easy As Falling Off a Privilege Log," National Law Journal (July 24, 2000) ("To meet your burden, you have to provide a description which, when read, establishes privileged content") (available on the Court's website). And of course, purely factual information, such as the raw content of witness interviews, should not be shielded by the deliberative process privilege without some explanation of how it is inextricably intertwined with the agency's deliberations. *Saunders v. City of Chicago*, No. 12 C 9158, 2015 WL 4765424, at *10 (N.D. Ill. Aug. 12, 2015) (citing *Enviro Tech*, 371 F.3d at 374-75).

1. **FCRL 4544-4556:** This set of "draft summary reports and findings," as Ms. Hearts-Glass has described them, is a "Summary Report of Investigation" that contains 40 editorial comments in "track changes" that are identified to a particular reviewer by his or her initials. The editorial comments, questions, and suggested changes clearly establish that the document is predecisional and deliberative.

2. **FCRL 4557-4569:** This set of "draft summary reports and findings" is another version of the "Summary Report of Investigation" and reflects the adoption of a senior reviewer's comments in whole or in part, and so it is clearly predecisional and deliberative.

3. **FCRL 4570-4581:** This set of "draft summary reports and findings" is a different document from Nos. 1 and 2 above and does not bear a specific overall title, but it contains a set of specific recommendations formulated and proposed by the investigator as outcomes of the investigation, and as such, it's clearly predecisional and deliberative.

4. **FCRL 4582-4593:** This document, described as "draft summary reports and findings," appears substantially identical to No. 3 above and contains the investigator's recommended outcomes of the investigation, so it is predecisional and deliberative as well.

5. **FCRL 4594-4607:** This document, described as "draft summary reports and findings," appears to be another preliminary draft of the "Summary Report of Investigation" document noted above in Nos. 1 and 2, containing substantial blocks of text that are italicized, indicating an investigator or senior reviewer's thoughts as to emphasis, inclusion or exclusion, or further deliberative scrutiny, and as such, it is predecisional and deliberative.

6. **FCRL 10834, 10835, 10860:** Described as "draft allegations and notes," these three documents are treated together here because they appear to be different draft iterations of summaries of specific allegations that were being considered as to various officers in this matter,

8

and each contains handwritten marginalia that indicates some form of review or input by one or more investigators or senior reviewers. Accordingly, these documents are predecisional and deliberative as well.

7. **FCRL 10745 (including pages 10747, 10749, and 10751, collectively "FCRL 10745"):** Described as "draft summary reports and findings," this single document appears to be an abbreviated or partial version of the untitled summary report described above in Nos. 1 and 3, except it does not contain investigator recommendations. This document presents a closer call as to applicability of the privilege, insofar as its content appears, on its face, to be purely factual and is without editorial suggestions or comments from others. But a closer look at the document indicates that its "preliminary" nature – we construe the corrected declaration broadly to have described this document as a "preliminary" draft – is enough to make it subject to the deliberative process privilege. When compared to other documents within the set of Withheld Materials, including, for example, documents FCRL 4544-4556 (discussed in Paragraph 1 above), the document FCRL 10745 reveals itself to be an earlier iteration of a COPA summary report, drafted *before* the editorial comments that appear on FCRL 4544-4556. Document FCRL 10745 contains certain punctuation errors and missing words, all of which were corrected in FCRL 4544-4556, which also is a longer document containing a more extended discussion of the investigation and various factual information that the investigation developed but that does *not* appear in document FCRL 10745. These aspects of FCRL 10745 indicate that disclosure of that document might well disclose the investigators' deliberative thought process insofar as some facts are included and some are not at the time of FCRL 10745's drafting, and insofar as the edits later made to the document show that it was a work in progress, to an extent sufficient to warrant coverage by the deliberative process privilege. In other words, FCRL 10745 is a "rough enough" draft to warrant a valid

concern that internal agency deliberation could be chilled if investigators were to know that their early drafts could be subject to discovery even though the investigators later revised them substantially to include additional facts, and even though the investigators composed such drafts well before a rigorous editing by their supervisors. It is of course possible that a draft, even if labeled "preliminary," could contain discussion or conclusions that largely match the agency's final conclusions so that disclosure does not have the potential to chill internal agency deliberation, but FCRL 10745, while a close call, is not such a document.

*Materials Not Covered by the Privilege*

As to a portion of the following document, the *prima facie* case for applicability of the privilege is not established, and the City will be ordered to produce that portion (as identified below in Paragraph 8(b)), in a redacted version of FCRL 10377 with the remainder of that document produced under an attorneys'-eyes-only designation:

8. **FCRL 10377:** This document is described in the corrected affidavit as "draft allegations and notes," but a more accurate description would call it a single page that appears to be printed from the CPD's "CLEAR" database, which the Seventh Circuit has described broadly as "a compilation of Chicago Police Department files." *United States v. Carter*, 573 F.3d 418, 421 (7th Cir. 2009).

a. In the portion of FCRL 10377 below the heading "Accused Members" and above the heading "Attachments," three subjects of the investigation are listed to the left of columns including "Accused Overall Finding[s]" (overall one-word findings are listed), "Recommended Penalty" (these columns are blank), and "Status" (for each of the three subjects, the words "Pending Investigative Review" appear). This portion of the document reasonably could be read as containing non-final recommended findings that still were subject to review and revision

and were thus predecisional and deliberative. The blanks under the column "Recommended Penalty" support that conclusion, in that they indicate that such recommendations had yet to be formulated. Accordingly, the Court finds this portion of FCRL 10377 – below the heading "Accused Members" and above the heading "Attachments" – to be within the deliberative process privilege in that it discloses at least some aspect of the state of the agency's internal deliberations as to how the investigation would or should come out as to the three subjects. Only the portion of FCRL 10377 described here in this Paragraph 8(a) is subject to the deliberative process privilege.

      b.     FCRL 10377 lists, beneath the heading "Attachments," 12 substantive[3] components of the investigative file, the name of the investigator who entered them into the file, and spaces to indicate whether the content and the inclusion of each of the 12 components had been "approved," with all of them "approved" as to inclusion but no indication of approval or disapproval as to content. The meaning of the "approval" status is not very clear, but importantly, the document does not set forth any substantive content of any of the 12 components (which include interviews, reports, recordings or other sources of information accessed during the investigation). Nor does it disclose any thought process within the agency as to whether or not to "include" any particular fact or conclusion contained in any of those items and, again, no particular fact or conclusion was even disclosed in the listing of the attachments in FCRL 10377 in any event. The Court can see no invasion of the agency's deliberative process and no chilling effect upon its deliberations from the mere disclosure of the listing (by name only) of these 12 substantive components of the investigation, and from disclosure of the three non-substantive items also appearing under the heading "Attachments." No other part of FCRL 10377 (beyond that

---

[3] A total of 15 items are listed under "Attachments," but the first three appear to be non-substantive.

mentioned above in Paragraph 8(a)) contains any information subject to the deliberative process privilege.

B. **Step Two: Whether Plaintiff's Need Overrides the Interest in Confidentiality**

In the second of the two steps undertaken by courts in the deliberative process privilege analysis, and upon determining that a *prima facie* case has been made for applicability of the privilege, "the court asks whether the moving party has shown a particularized need for the withheld information" that outweighs the reasons for confidentiality. *Rodriguez*, 329 F.R.D. at 186 (citing *Ferrell*, 177 F.R.D. at 428). "Consistent with its purpose, the deliberative process privilege typically does not justify the withholding of purely factual material, nor of documents reflecting an agency's final policy decisions, but it does apply to predecisional policy discussions, and to factual matters inextricably intertwined with such discussions." *Enviro Tech*, 371 F.3d at 374-75 (internal citations omitted). The following factors are relevant to this analysis:

> (1) the relevance of the documents to the litigation; (2) the availability of other evidence that would serve the same purpose; (3) the government's role in this litigation; (4) the seriousness of the litigation and the issues involved; and (5) the degree to which the disclosure of the document sought would tend to chill future deliberations within government agencies.

*Rodriguez*, 329 F.R.D. at 187. For the reasons stated below, as to the Withheld Materials determined to be within the deliberative process privilege and noted above in Part II(A)(3) in Paragraphs 1-7 and 8(a), the Court finds that the Plaintiff has not shown a particularized need sufficient to break or override the privilege.

The Court adopts its earlier discussion (per Judge Kim in his February 6, 2019 memorandum opinion) of the *Holmes* and *Turner* cases. *See id.* at 188-89. And Judge Kim's mode of analysis yields the same outcome here, as to the Withheld Materials described in Paragraphs 1-7 and 8(a) as within the deliberative process privilege, as it did to the 22 emails Judge

Kim had found to be within the privilege in his February 6 opinion. The first of the two factors (relevance and availability of other evidence) again weigh heavily against Plaintiff in this analysis, at least because the City has provided her with the entire investigative file for Log #1077459, including witness statements and documentary evidence. *See id.* Earlier draft iterations of these reports or summaries, or portions of them, containing editorial comments and questions, or edits made upon those comments, add nothing relevant to the evidence Plaintiff already has. In addition, the Court's review of the Withheld Materials described in Paragraphs 1-7 and 8(a), including those documents containing draft investigator recommendations, does not "lend credence to her assertions that she needs this particular evidence to substantiate her theory that IPRA investigators improperly manipulated her file." *Id.* As to the third and fourth factors, the Court will not discuss them because they do not cut either way in the analysis. As to the fifth factor, the Court does find that disclosure of the Withheld Materials described in Paragraphs 1-7 and 8(a) above (and covered by the deliberative process privilege) could well have a chilling effect on internal agency deliberations at COPA.[4] If investigators' or reviewers' frank comments, criticisms or other editorial input into this particular investigative, non-final, predecisional work product were disclosed, those investigators or reviewers might well be less candid or thorough in their internal comments.

Plaintiff's need for these materials would have to be stronger to overcome the privilege, and she has not made that showing, in the Court's judgment, in view of our *in camera* review of the materials. The materials simply do not show any particular reason "how or why" (as Plaintiff

---

[4] The Court is not persuaded by the argument that because the Withheld Materials were created by IPRA, the predecessor agency to COPA, they cannot now be said to be subject to the deliberative process privilege because the matter is now a COPA investigation. If disclosure of the Withheld Materials would chill internal deliberations at COPA, where this investigation now resides and where most of these types of investigations are now done, that is sufficient for us to undertake the requisite consideration of whether the deliberative process privilege applies.

puts it) the investigation "switched" to one in which Plaintiff became the accused instead of the victim. They do not suggest any improper manipulation of the investigation, as we noted above. And to the extent they show the "course of the investigation and how it changed course," they do not do so beyond anything the Plaintiff would already have in the produced investigative file, namely the factual investigation and development, and witness statements, recounted in the final reports in those files.

## III. Investigatory Privilege

With the Withheld Materials, except for those described above in Paragraph 8(b), being shielded from disclosure by the deliberative process privilege, the Court does not reach the City's claim of an investigatory privilege over those materials. To the extent the City does claim the investigatory privilege over the materials described above in 8(b), a brief discussion is warranted.

As a prefatory note, we point out that the City did not support its investigatory privilege claim in its responsive brief with any authority or any discussion of what the privilege is or why it ought to apply. Instead, it mentioned the investigatory privilege primarily in the two Hearts-Glass declarations, and at some greater detail in the second of those two declarations. (*See* D.E. 190 ¶¶ 7-8.) This mode of presentation inhibits meaningful briefing of the investigatory privilege issue (which the Plaintiff did not mention in her reply brief, not surprisingly, because the City never mentioned it in its response brief) and consideration of the issue by the Court. A good argument may be made that the City has waived or forfeited any argument concerning applicability of the investigatory privilege. "Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority." *In re Lisse*, 921 F.3d 629, 641 (7th Cir. 2019) (quoting *M.G. Skinner & Assocs. Ins. Agency v. Norman-Spencer Agency*, 845 F.3d 313, 321 (7th Cir. 2017)). "A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is

sound despite a lack of supporting authority . . . forfeits the point. We will not do his research for him." *Mathis v. N.Y. Life Ins. Co.*, 133 F.3d 546, 548 (7th Cir. 1998). But given that only the unredacted portion of a single document (the part of FRCL 10377 described in Paragraph 8(b)) remains at issue on this motion, the Court will address the applicability of the investigatory privilege as to that material.

The Seventh Circuit has recognized a qualified "law enforcement investigatory privilege" to maintain the confidentiality of files containing sensitive information that could interfere with ongoing criminal investigations. *Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1125 (7th Cir. 1997). In the Court's February 6, 2019 deliberative process and investigatory privilege ruling in this case, the Court per Judge Kim found that Ms. Hearts-Glass's December 5, 2018 declaration, while sufficient to assert the deliberative process privilege, was insufficient to demonstrate that the documents on that earlier motion should be protected from disclosure under the investigatory privilege because her "general assertions d[id] not identify a specific harm beyond a concern that the withheld materials might influence future witness and officer statements to investigators if they are disseminated." *Rodriguez*, 329 F.R.D. at 189-90. Ms. Hearts-Glass's recently filed, corrected declaration on the instant motion does not add much if any more substance to the equation, but we need not reach the question of the sufficiency of that declaration on this point because of our *in camera* review of the Withheld Materials, including those described in Paragraph 8(b) above.

Our review demonstrates quite clearly that even if the investigation is still ongoing (a proposition that the Plaintiff disputes, and that the Court has assumed for purposes of the motions to compel),[5] the content of the Paragraph 8(b) material is not protected by the investigatory

---

[5] The Court does not disturb its earlier assumption, *see Rodriguez*, 329 F.R.D. at 189, that the COPA investigation is ongoing for purposes of this analysis. Although the Plaintiff raises questions about how the investigation stemming from an October 2015 incident could still be open and ongoing at this stage, *see* D.E. 178, Pl.'s Reply Re Motion to Compel at 1-2, she still has no hard evidence that the investigation is *not* ongoing, and the Court has before it the

privilege. There is absolutely nothing about the bare listing of the three non-substantive and 12 substantive "attachments," in FCRL 10377, that discloses any investigative sources or methods, or that would interfere with any ongoing aspect of the COPA investigation if the Paragraph 8(b) material is disclosed.

Consistent with the Court's February 6, 2019 Memorandum Opinion and Order, this Court out of an abundance of caution is ordering the material disclosed in this case to be produced under an attorneys'-eyes-only designation, allowing Plaintiff's attorneys to review this material and to use it only for purposes of this litigation. *See id.* at 190.

### IV. Plaintiff's Motion to Modify Discovery Deadlines

In view of the City's agreement (D.E. 175 at 2, 15)[6] to the relief sought in Plaintiff's Motion to Modify Discovery Deadlines (D.E. 168), that Motion is granted, and the fact discovery cutoff is extended to September 16, 2019, which is the first weekday after 45 days from the entry of this Order.

---

affidavit of Ms. Hearts-Glass stating unequivocally that "this is a pending investigation in which additional investigative steps may still be required." (D.E. 190 ¶ 8.) Plaintiff's argument that the City's assertion is implausible because of the "dated and duplicative" nature of the investigative documents produced by the City does supply a basis for the Court to reach a different conclusion than the one it reached in its February 6, 2019, Memorandum Opinion and Order rejecting, for now, Plaintiff's arguments that the investigation is actually over. *See Rodriguez*, 329 F.R.D. at 189.

[6] The City's agreement to the motion to extend the discovery deadlines, and to a narrowing of documents being withheld under the deliberative process privilege after Plaintiff filed her motion to compel, suggests that a more rigorous compliance with the meet-and-confer requirement of Local Rule 37.2 would have been productive and would have conserved resources here. Nonetheless, the Court moved straight to consideration of the two motions under the theory that it would have had to resolve the dispute over the most current set of Withheld Documents in any event, and acting on the motions seemed more efficient than bouncing them for non-compliance with the meet-and-confer requirement, only to see them refiled some time later. All parties are urged to comply with this important local rule (and its counterpart within Rule 37 of the Federal Rules of Civil Procedure) to streamline litigation and to conserve the resources of the parties and the Court. As is the case with any federal rule or rule of court, parties who do not comply do so at their peril.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Compel (D.E. 170) is granted in part, with the City ordered to produce only FCRL 10377, in redacted form so that the material described above in Paragraph 8(b) of Part II(A)(3) of this opinion is produced, subject to an attorneys'-eyes-only designation. The Motion to Compel is denied in part, with the City permitted to withhold the remaining Withheld Materials, namely those described in Paragraphs 1-7 and 8(a) of Part II(A)(3) above. Plaintiff's Motion to Modify Discovery Deadlines (D.E. 168) is granted, with the fact discovery cutoff extended to September 16, 2019.

ENTER:

*[signature]*

**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED: August 1, 2019**